# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TEAMSTERS LOCAL 237 WELFARE FUND, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 3:20-cv-00457 Judge Aleta A. Trauger |
| SERVICEMASTER GLOBAL HOLDINGS, INC., NIKHIL M. VARTY and ANTHONY D. DiLUCENTE, ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM

Before the court is the defendants' Motion to Transfer (Doc. No. 32), seeking transfer of this case to the United States District Court for the Western District of Tennessee, Memphis Division, "[f]or the convenience of [the] parties and witnesses, [and] in the interests of justice." 28 U.S.C. § 1404(a). For the reasons set forth herein, the motion will be granted.

**I.     BACKGROUND**

Plaintiff Teamsters Local 237 Welfare Fund ("Fund"), individually and on behalf of all others similarly situated, initiated this action on June 1, 2020 by filing a class action Complaint against defendant ServiceMaster Global Holdings, Inc. ("ServiceMaster" or the "Company"), ServiceMaster's former CEO, Nikhil M. Varty, and its former Chief Financial Officer, Anthony D. DiLucente, asserting claims under the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a), and 17 C.F.R. §240.10b-5.

ServiceMaster, through its subsidiaries, is a leading provider of termite, pest control, cleaning, and restoration services to residential and commercial customers. (Doc. No. 1 ¶ 2.) Its

largest business segment is Terminix, a termite and pest control business. (*Id.*) This case was triggered by ServiceMaster's announcement of "disappointing preliminary financial results for the third quarter of fiscal 2019," relating primarily to costly litigation arising from infestations by the Formosan termite, an invasive termite species native to Southern China, in Mobile, Alabama. (*Id.* ¶¶ 4, 5.) The Company announced that its net income had declined on a year-over-year basis during that quarter, and it accordingly revised downward its projected full-year adjusted EBITDA. (*Id.* ¶ 5.) Based on this news, the price of ServiceMaster's shares declined over 20%. (*Id.* ¶ 6.) This news was allegedly contrary to statements made in ServiceMaster's public filings with the Securities and Exchange Commission, conference calls, and other public financial disclosures and press releases (collectively, "Public Disclosures") which, the plaintiff alleges, painted a positive overall picture of ServiceMaster's financial outlook and, therefore, were "materially false and misleading" for failing to disclose various "adverse facts" concerning the Company's Formosan termite exposure. (*Id.* ¶¶ 4, 30–50.) The Fund alleges, in short, that through ServiceMaster's Public Disclosures, it and a putative class of investors bought ServiceMaster stock at "artificially inflated prices and were damaged when the relevant truth was revealed." (*Id.* ¶ 62.)

Following entry of an agreed Stipulation and Order postponing their obligation to answer or otherwise respond to the initial Complaint, the defendants filed their Motion to Transfer on July 6, 2020, along with a supporting Memorandum of Law and the Declaration of John Mullen, ServiceMaster's Vice President of Finance and Chief Accounting Officer. (Doc. Nos. 32, 33, 34.) In support of their motion, the defendants assert, first, that ServiceMaster is a Delaware corporation with its principal place of business in Memphis, Tennessee and that both of the individual defendants reside in the Memphis area and work or formerly worked out of ServiceMaster's Memphis office. Memphis is within the geographic region encompassed by the Western District

of Tennessee. As a result, this action could have been brought in that district. 28 U.S.C. § 1391; 15 U.S.C. § 78aa. The defendants further argue that transfer would serve the convenience of the parties and promote the interests of justice, because the defendants, witnesses, and relevant evidence are all located in the Western District; the events that gave rise to the plaintiff's claims occurred in the Western District; the plaintiff's choice of forum is entitled to little or no deference, because the plaintiff itself has no connection to the Middle District of Tennessee; and no countervailing public interest factors weigh against transfer. (*See generally* Doc. No. 33.)

In its Response, the Fund argues that its choice of venue is entitled to a high level of deference, in particular because this is a securities case subject to the special venue provision in 15 U.S.C. § 78aa, and that the other relevant factors are either neutral or weigh against transfer. (Doc. No. 38.) With the court's permission, the defendants filed a Reply (Doc. No. 42), generally refuting the plaintiff's contentions and arguing that § 78aa does not call for according any special significance to the plaintiff's choice of forum under the § 1404(a) analysis.

**II.     LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). With this statute, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002). In ruling on a motion to transfer venue, a district court should consider, on a case-specific basis, "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (quoting *Moses v.*

*Bus. Card Express, Inc.*, 929 F.2d 1131, 1136–37 (6th Cir. 1991)); *accord Kerobo*, 285 F.3d at 557.

The Sixth Circuit has suggested that relevant factors to consider include (1) the convenience of the parties and witnesses; (2) the accessibility of evidence; (3) the availability of process to make reluctant witnesses testify; (4) the costs of obtaining willing witnesses; (5) the practical problems of trying the case most expeditiously and inexpensively; and (6) the interests of justice. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). The moving party bears the burden of establishing that these factors weigh strongly in favor of transferring venue. *See, e.g.*, *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998); *Blane v. Am. Invs. Corp.*, 934 F. Supp. 903, 907 (M.D. Tenn. 1996).

### III.     DISCUSSION

Venue in the federal district courts ordinarily is governed by 28 U.S.C. §§ 1391 through 1413. Under the general venue provision, an action may be brought in any district "where any defendant resides" if all defendants reside in the same state, where "a substantial part of the events or omissions giving rise to the claim occurred," or, if no other district is proper, "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(a). There is no dispute that this case could have been brought in the Western District of Tennessee, which is the threshold inquiry in any § 1404(a) analysis. The court therefore moves directly to the parties' arguments regarding case-specific factors.

#### A.     The Convenience of the Parties

All three defendants reside in Memphis, making the Western District of Tennessee more convenient for them than this district. The plaintiff, however, is located outside Tennessee. Thus, to the extent travel is required, the plaintiff's agents will have to travel, regardless of whether

venue remains in this district or is transferred. The defendants posit that, as a result, the plaintiff will not be inconvenienced by transfer.

The plaintiff does not address this issue, and the court finds that it weighs in favor of transfer.

### B. The Convenience of Witnesses

The defendants argue that, because ServiceMaster is headquartered in Memphis, within the Western District of Tennessee, the witnesses—both party and non-party—"will be found in or near Memphis and more than 200 miles away from this District." (Doc. No. 33, at 9.) They claim that the ServiceMaster employees responsible for managing the Formosan termite damage claims in Mobile, Alabama are based in Memphis, as are the employees responsible for preparing the various Public Disclosures that the Fund challenges here. (Mullen Decl. ¶¶ 5-6, 8.) They also claim that their non-party witnesses, including ServiceMaster's accountants at Deloitte & Touche LLP, are based in Memphis and, being more than 200 miles away from this district, would not be subject to this court's subpoena power.

The plaintiff contends that litigating in the Middle District of Tennessee would not "severely inconvenience" the witnesses, because Nashville and Memphis are only approximately 212 miles apart. It also argues that the defendants have failed to specify key witnesses or the nature of their testimony, without offering any evidence that they or their witnesses would be unwilling to testify in this district or how severely they would be inconvenienced. Finally, the plaintiff argues that, even if the defendants had proffered such evidence, "the inconvenience of witnesses who are employees of a party [are] not ordinarily given the same consideration as is given other witnesses." (Doc. No. 38, at 17 (quoting *Doe v. United States*, No. 3:16-cv-0856, 2017 WL 4864850, at *3 n.5 (M.D. Tenn. Oct. 26, 2017) (Trauger, J.)).)

In their Reply, the defendants point out that the plaintiff has not offered the identity of any witness for whom the Middle District of Tennessee would be more convenient. They further posit that, in light of the ongoing COVID-19 pandemic and the uncertainty of travel going forward, the fact that all identified witnesses reside in or near Memphis and within the Western District of Tennessee means that this factor weighs in favor of transfer.

Convenience to party witnesses is an important consideration, but "it is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight." *Medtech Products Inc. v. Ranir, LLC*, No. 2:15-CV-02584-JPM-TMP, 2016 WL 67895, at *6 (W.D. Tenn. Jan. 5, 2016) (quoting *Steelcase, Inc. v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 721 (W.D. Mich. 2004)); *see also B.E. Tech., LLC v. Facebook, Inc.*, 957 F. Supp. 2d 926, 932 (W.D. Tenn. 2013) ("[T]he convenience of potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty consideration, because it is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not." (citation omitted)).

Generally, "[w]hen asserting that a transferee district is more convenient for witnesses, a party must produce evidence regarding the precise details of the inconvenience of the forum chosen by the plaintiff." *B.E. Tech.*, 957 F. Supp. 2d at 931 (internal quotation marks and citation omitted). To do so, the moving party "must do more than simply assert[ ] that another forum would be more appropriate for the witnesses; he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district." *Id.* (internal quotation marks and citation omitted).

In this case, no witnesses are located in the Middle District of Tennessee, and all of the defendants' party and non-party witnesses are located in the Western District of Tennessee,

including those individuals who were engaged in analyzing, processing, and managing the Formosan termite claims, the individuals responsible for analyzing, managing, communicating, and preparing the Public Disclosures, and the non-party accountants. The plaintiff is correct that the defendants have not offered evidence regarding the actual inconvenience to their witnesses if the case stays in this forum, nor have they shown that any of the witnesses, party or non-party, could not be compelled to testify in this district. *See* Fed. R. Civ. P. 45(c)(1)(B)(ii) (providing that a subpoena may command a witness's appearance at a trial "within the state where the person resides, is employed, or regularly transacts business . . . if the person . . . is commanded to attend a trial and would not incur substantial expense"). On the other hand, because *no* witnesses are located in this district, the plaintiff's representatives will be required to travel, no matter in which district the case proceeds. Consequently, transfer would not simply be a matter of shifting inconvenience from one party to the other. Although maintaining the case in this district might pose relatively little inconvenience to the defendants' party and non-party witnesses, this factor nonetheless weighs in favor of transfer. *Accord In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer."); *see also* S*ovik v. Ducks Unlimited, Inc.*, No. 3:11-CV-0018, 2011 WL 1397970, at *6 (M.D. Tenn. Apr. 13, 2011) (Trauger, J.) (finding, based on the "unrebutted affidavit of the defendant's human resources director, that 'most, if not all, of the relevant witnesses (management, human resources, etc.) for this matter'" resided in Memphis and, therefore, that it would "clearly be more convenient for the defendant and its witnesses to proceed" in the Western rather than the Middle District of Tennessee).

### C. The Location of Evidence

The defendants argue that, because they work and reside in or near Memphis, all discoverable evidence relevant to the plaintiff's claims—including corporate records, draft disclosures, financial reports, and materials concerning the ongoing termite litigation—is located in the Western District of Tennessee and that no readily identifiable evidence is located within the Middle District.

In response, the plaintiffs contend that this factor is neutral, "because documents may easily be scanned and electronically produced, faxed, or delivered overnight." (Doc. No. 38, at 19 (quoting S*ardeye v. Wal-Mart Stores E., LP*, No. 3:18-cv-01261, 2019 WL 4276990, at *5 (M.D. Tenn. Sept. 10, 2019) (Newbern, M.J.)).) They also argue that electronic production is the usual method for producing discovery in securities cases and that the defendants have not suggested that they cannot follow that practice in this case.

The court is not persuaded that this factor is entirely neutral. The plaintiff does not contend that *any* discoverable evidence is located in the Middle District of Tennessee. Moreover, it appears that several circuit courts have rejected the proposition that advances in electronic document production and transfer obviate the importance of this factor. *See, e.g.*, *In re Link A Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011) (reversing a district court that did not consider the factor, stating: "While advances in technology may alter the weight given to these factors, it is improper to ignore them entirely"); *In re Genentech*, 566 F.3d at 1345–46 (finding clear error where a district court "minimized the inconvenience of requiring the petitioners to transport their documents"); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."); *B.E. Tech., LLC*, 957 F. Supp. 2d at 936

Case 2:20-cv-02553-JTF-tmp   Document 43   Filed 07/30/20   Page 9 of 14    PageID 384

9

("[T]he Court disagrees with B.E.'s contention that advances in electronic document transfer reduce the importance of the location-of-sources-of-proof factor.").

Because no evidence is located in this district, and the plaintiff does not seriously dispute the defendants' assertion that all discoverable documentary evidence is located within the Western District of Tennessee, this factor clearly weighs in favor of transfer.

### D.   The Location in Which the Events Giving Rise to the Plaintiff's Claims Occurred

The defendants argue that the "center of gravity" of an action is an important consideration and that the center, in this case, is Memphis, given that "all Defendants and the relevant employees involved in managing Formosan claims and preparing the alleged misstatements are located in Memphis." (Doc. No. 33, at 10.)

For its part, the Fund acknowledges that the "locus of operative facts" is relevant to the § 1404(a) analysis, but it claims that "the facts underlying this action implicate a number of fora— including the Middle District—and do not elevate any one forum above others." (Doc. No. 38, at 17.) This is because, it argues, the defendant made "false and misleading statements and omissions relating to the Company's business, operations and financial conditions which were transmitted by Defendants nationwide." (*Id.*) The Fund also asserts that some of the operative facts are related to the Formosan claims activity in Mobile, Alabama, where ServiceMaster maintains a Terminix office. Thus, it claims, discoverable evidence and witnesses are also likely located in or around Mobile. It argues that, given these facts, this factor "should not override the deference accorded Plaintiff's choice of forum." (*Id.* at 18.) The defendants refute this argument, pointing out that the plaintiff does not present any actual facts to counter the unrebutted affidavit of ServiceMaster's Chief Accounting Officer that the witnesses with knowledge about the Formosan termite claims are based in, and worked from, ServiceMaster's Memphis headquarters. (Doc. No. 34 ¶ 6.)

The locus of operative facts is an "important factor" in the analysis of a motion to transfer venue. *Sacklow*, 377 F. Supp. 3d at 880 (citations omitted); *see Oakley v. Remy Int'l, Inc.*, No. 2:09-0107, 2010 WL 503125, at *5 (M.D. Tenn. Feb. 5, 2010) (Echols, J.) ("Further, the location of the events which gave rise to the dispute favors transfer. A fundamental principle guiding the Court's analysis of a motion to transfer is that litigation should proceed in that place where the case finds its center of gravity." (citations and internal quotation marks omitted)). The plaintiff attempts to avoid the import of this factor by insisting that the defendant's allegedly false statements were transmitted nationwide. Regardless, the course of events that led to the dissemination of the statements all occurred in Memphis. And even if the plaintiff is correct that some of the events giving rise to its claims occurred in Mobile, Alabama, the fact remains that none of the operative events took place in this district.

Accordingly, this factor too weighs in favor of transfer.

### E.  The Plaintiff's Choice of Forum

"While . . . a plaintiff's choice of forum should be given weight when deciding whether to grant a motion to change venue, this factor is not dispositive." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998). Moreover, under certain circumstances, a plaintiff's choice is entitled to less weight than it ordinarily would be. Among these circumstances is "when plaintiffs do not reside in their chosen forum." *W.H. by and through M.H. D.R. v. Tenn. Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996, at *3 (M.D. Tenn. Jan. 20, 2016) (Trauger, J.); *accord Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 878 (M.D. Tenn. 2019) (Crenshaw, C.J.). Second, when a case is brought as a nationwide class action, "the plaintiff's claim for deference to its choice of venue [is weakened] further because the class members are not limited to residents of [this district], and it is not yet clear who the lead plaintiff in the action [will] be." *Wayne Cty. Employees' Ret. Sys. v.*

*MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 976 (E.D. Mich. 2009).[1] And third, courts typically accord a plaintiff's choice of forum little weight, "where none of the conduct complained of occurred in the forum selected by the plaintiff." *Am. Signature Inc. v. Moody's Invs. Servs., Inc.*, No. 2:09-CV-878, 2010 WL 2667367, at *2 (S.D. Ohio July 2, 2010) (citations omitted).

All three of these factors come into play here. The plaintiff does not reside in this district or have any apparent connection to this forum. It brings the case as a class action, and, although the plaintiff has not yet formally been named as such, it is currently the only candidate for lead plaintiff. And finally, as already discussed, none of the operative conduct took place in this district.

In its Response to the defendants' motion, the plaintiff does not provide any basis for according substantial weight to its choice of forum other than the fact that this is a securities case subject to the special venue provision set forth in the Securities Exchange Act of 1934. This venue provision, 15 U.S.C. § 78aa, also referred to as Section 27 of the Securities Exchange Act, "grants jurisdiction to the federal courts and provides for venue and service of process." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979). Section 78aa states in relevant part:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa. In other words, the rule for establishing venue under § 78aa is more permissive than under 28 U.S.C. § 1391, consistent with the intent of the venue and jurisdiction provision in the securities laws "to grant potential plaintiffs liberal choice in their selection of a forum." *Ritter v. Zuspan*, 451 F. Supp. 926, 929 (E.D. Mich. 1978); *see also Leroy v. Great W. United Corp.*, 443

---

[1] The defendant asserts that the Fund is a welfare benefit plan based in New York. (Doc. No. 33, at 10.) The plaintiff concedes that it "resides outside this district." (Doc. No. 18, at 12.)

U.S. 173, 188 (1979) (noting that "the underlying policy of § 27 [is] to confer venue in a wide variety of districts in order to ease the task of enforcement of federal securities law").

In light of the breadth of § 78aa, the defendants in this case do not contend that the court lacks jurisdiction or that venue is improper in this district; they argue, instead, only that transfer of venue is warranted under 28 U.S.C. § 1404(a). Several courts have concluded that, "[p]articularly in an action under the securities laws, strong weight is given to plaintiffs' choice of forum 'since the venue provision of the Act is designed to serve the underlying federal policy of allowing the plaintiff the widest possible choice of forums.'" *Borg v. L & J Energy, Inc.*, No. 1:89-CV-1179, 1990 WL 122225, at *5 (W.D. Mich. May 25, 1990) (quoting *Abeloff v. Barth*, 119 F.R.D. 315, 330–31 (D. Mass. 1988)). The Sixth Circuit has never made such a pronouncement, however, and this court finds that § 78aa does not enter into the § 1404(a) equation, beyond establishing that venue in the district in which the case was filed was proper in the first instance, such that a motion under § 1404, rather than § 1406, is appropriate.[2]

The court finds that the venue provision in § 78aa does not justify according any particular weight to the plaintiff's choice of forum, given that the plaintiff resides outside this district and has no apparent connection to this district and that the actions giving rise to the plaintiff's claims did not occur in this district. Under these circumstances, the court finds that the plaintiff's choice of forum weighs in favor of not transferring venue, but it does not weigh strongly. *Accord Eight Mile Style, LLC v. Spotify USA Inc.*, No. 3:19-CV-0736, 2020 WL 1640425, at *8 (M.D. Tenn. Apr. 2, 2020) (Trauger, J.) ("Although Plaintiff's choice of forum is afforded less deference than

---

[2] The only circuit court case to which the plaintiff cites involved a motion to dismiss for lack of personal jurisdiction, not a motion to transfer under § 1404(a). *See Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985) (reversing the district court's dismissal of certain defendants for lack of personal jurisdiction based on the broad provisions of 15 U.S.C. § 78aa).

if Plaintiff resided in [this district], it is still an important factor weighing against transfer." (citation omitted)).

### F. "Public Interest Factors"

The defendants contend simply that "no countervailing public interest factors" are relevant here, since both this district and the Western District are "equally capable of applying the federal securities law." (Doc. No. 33, at 12.) They also state that they are "not aware of any practical considerations that may impair the Western District's ability to hear the case, *e.g.*, docket congestion or other potential trial management inefficiencies." (*Id.*) On the other hand, they argue, the Western District has a compelling interest in deciding local controversies "at home." (*Id.*)

The plaintiff agrees that both courts are equally capable of applying the law, but it argues that the relative caseloads of the Middle and Western Districts of Tennessee, the number of pending cases in each court, the cases pending per judge, and the percentage of civil cases over three years old, considered together, weigh against transfer. (Doc. No. 38, at 20 (citing www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2020.pdf).)

The court has considered the data the plaintiff references and finds that the statistics do not bear out its representation that this factor weighs against transfer. Rather, a comparison of the relevant statistics shows that the two courts do not differ appreciably in performance. This factor is neutral, weighing neither in favor of nor against transfer.

### G. Balancing the Relevant Factors

As the defendants argue, it appears that all of the witnesses involved in preparing the challenged disclosures and public statements, all of the documentary evidence, and all of the facts underlying the central allegations in the Complaint are based in Memphis, at ServiceMaster's headquarters, in the Western District of Tennessee. Deference to the plaintiff's choice of forum weighs against transfer, but only slightly, and the "public interest" factor is neutral, weighing

neither for nor against transfer. All of the other relevant factors—the parties' convenience, the witnesses' convenience, the location of evidence, and the locus of operative facts—weigh in favor of transfer. Some of these factors carry more weight than others, but, considered together, they substantially outweigh the single factor in the plaintiff's column on the balance sheet. In sum, the court finds that the defendants have carried their burden of establishing that transfer is warranted.

## IV.   CONCLUSION

For the reasons forth herein, the court will grant the Motion to Transfer. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge