IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **TEAMSTERS LOCAL 237 WELFARE FUND, individually and on behalf of Others similarly situated,** ) ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | No. 2:20-cv-02553-STA-tmp |
| **SERVICEMASTER GLOBAL HOLDINGS, INC. et al.,** ) ) ) | |
| **Defendants.** ) | |

**ORDER GRANTING DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS**

This is a securities fraud action based on allegedly misleading statements made by a corporation and its CEO and CFO about the extent of the company's legal exposure and liabilities, the types of concerns which may have bearing on the company's profitability. Before the Court is Defendants Terminix Global Holdings, Inc. (f/k/a ServiceMaster Global Holdings, Inc.), Nikhil M. Varty, and Anthony D. DiLucente's Joint Motion for Judgment on the Pleadings (ECF No. 75). Plaintiff Teamsters Local 237 Welfare Fund has filed a response in opposition, and Defendants have submitted a reply brief. For the reasons that follow, the Joint Motion for Judgment on the Pleadings is **GRANTED**.

**BACKGROUND**

On June 1, 2020, Plaintiffs filed a Complaint, alleging securities fraud claims on behalf of a class of investors against Defendant ServiceMaster Global Holdings, Inc. and the company's senior executives for violations of the Securities Exchange Act of 1934 ("the 1934 Act"). Compl.,

1

June 1, 2020 (ECF No. 1). The initial Complaint specifically alleged its claims "on behalf of all purchasers of ServiceMaster common stock between February 26, 2019 and November 4, 2019 . . . ." *Id.* ¶ 1. Plaintiffs alleged violations of two specific sections of the 1934 Act, (1) §10(b) of the 1934 Act and Rule 10b-5, and (2) § 20(a) of the 1934 Act. Plaintiffs brought suit in the United States District Court for the Middle District of Tennessee. Shortly after the filing of the initial Complaint, Defendants filed a motion to transfer the action to the Western District of Tennessee, arguing that Defendant ServiceMaster has its principal place of business in Memphis, Tennessee, and the company's senior executives lived and worked in Memphis. *See* Defs.' Mot. to Transfer, July 6, 2020 (ECF No. 32). On July 30, 2020, U.S. District Judge Aleta Trauger granted the motion and transferred the case to this Court. *See* Order Granting Mot. to Transfer, July 30, 2020 (ECF No. 44). On March 8, 2021, U.S. District Judge John T. Fowlkes transferred the case once more to the undersigned for all further proceedings. Order of Transfer, Mar. 8, 2021 (ECF No. 55).

On May 13, 2021, the Court entered an order appointing Teamsters Local 237 as Lead Plaintiff and its chosen counsel Robbins Geller Rudman & Dowd LLP as lead counsel. Order Appointing Lead Pl. and Scheduling Order, May 13, 2021 (ECF No. 59). As part of its ruling, the Court ordered that all securities class actions against any or all of the Defendants subsequently filed in, or transferred to, this District were to be consolidated with this action, though to date no further actions have been filed or transferred, as far as the Court is aware. The Court also adopted a scheduling order with case management deadlines proposed by the parties. Consistent with the deadlines in the schedule, Lead Plaintiff filed an Amended Complaint (ECF No. 60) on June 28, 2021. Defendants then filed a joint motion to dismiss the Amended Complaint (ECF No. 63) on August 12, 2021.

On March 31, 2022, the Court entered an order granting the joint motion to dismiss. The Court concluded that the Amended Complaint plausibly alleged how some of Defendants' statements were misleading but that the Amended Complaint did not allege a strong inference of scienter. As a result, Plaintiffs had not met the heightened pleadings standard for the elements of a Rule10b-5(b) misrepresentations claim for securities fraud. Notably, the Court found that the Amended Complaint actually alleged three types of Rule 10b-5 violations as grounds to hold Defendants liable for securities fraud: "Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of ServiceMaster common stock during the Class Period." Am. Compl. ¶ 141.

But the Joint Motion to Dismiss did not argue for the dismissal of each of the Amended Complaint's Rule 10b-5 theories of liability, just the actual misrepresentation/omission theory under Rule 10b-5(b). Defendants' opening brief did not squarely argue for the dismissal of a "scheme liability" theory of securities fraud, despite the fact that the Amended Complaint made a number of allegations concerning the alleged "scheme" to conceal the extent of Terminix's legal exposure to damages claims from Formosan termite activity. Defendants' Rule 12(b)(6) arguments were aimed at the allegations of material misrepresentation and omission and scienter with specific reference to Rule 10b-5(b), and Defendants' memorandum briefly quoted some of the allegations mentioning a "scheme" but never referred to Rule 10b-5(a) or (c). In the final analysis, the Court dismissed the misrepresentation claims under Rule 10b-5(b) but took no

position on the merits of the Amended Complaint's allegations of scheme liability under Rule 10b-5(a) or (c) and declined to consider whether the Amended Complaint stated its "scheme liability" claims.

In their Joint Motion for Judgment on the Pleadings, Defendants now seek the dismissal of Lead Plaintiff's "scheme liability" claim for the same flaw that required the dismissal of the misrepresentation claim. The Amended Complaint fails to make plausible allegations to show that Defendants acted with scienter. According to Defendants, "[t]here is no daylight between the [Amended Complaint's] two theories" of misrepresentation and scheme liability. Defs.' Mem. in Support 2 (ECF No. 75-1). The same failure to allege scienter in support of the misrepresentation theory also dooms the scheme liability theory. Lead Plaintiff answers that Defendants cannot use a motion for relief under Federal Rule of Civil Procedure 12(c) to circle back to an issue they failed to raise in their Rule 12(b)(6) motion. Lead Plaintiff maintains that the Amended Complaint plausibly alleges that Defendants knowingly or recklessly engaged in deceptive acts with an intent to carry out their scheme.

## STANDARD OF REVIEW

Defendants seek judgment on the pleadings. "Pursuant to Federal Rule of Civil Procedure 12(c), after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *Barber v. Charter Twp. of Springfield, Mich.*, 31 F.4th 382, 386 (6th Cir. 2022) (quoting Fed. R. Civ. P. 12(c)). In the Sixth Circuit, courts analyze Rule 12(c) motions "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021)). Just as with a motion to dismiss under Rule 12(b)(6), a court assessing a Rule 12(c) motion "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual

4

allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Engler v. Arnold*, 862 F.3d 571, 574–75 (6th Cir. 2017) (citing *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006)). The presumption of truth does not extend to "legal conclusions or unwarranted factual inferences." *Moderwell*, 997 F.3d at 659 (quoting *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017)). This means that in order to survive a Rule 12(c) motion at the pleadings stage, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Engler*, 862 F.3d at 575 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

Lead Plaintiff objects that Defendants cannot raise their failure-to-state-a-claim defense in a Rule 12(c) motion because they failed to present their argument in their previously filed Rule 12(b)(6) motion. It is true that Rule 12(g)(2) prohibits a party from filing serial Rule 12 motions, in which the party raises "a defense or objection [in a subsequent motion] that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). In that circumstance, the party waives an omitted defense by failing to present it in the inital Rule 12(b) motion but only the defenses listed in Rule 12(b)(2) through (5). Fed. R. Civ. P. 12(h)(1)(A). The Rule excludes the failure-to-state-a-claim defense under Rule 12(b)(6). In fact, Rule 12(h)(2) specifically permits a party to raise certain defenses in a motion for judgment on the pleadings, one of which is the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(h)(2)(A)-(C) (also listing the failure to join a party required by Rule 19 and the failure to state a legal defense to a claim). The Supreme Court has explained it this way. "Rules 12(h)(2) and (3) prolong the life of certain

5

defenses." *Kontrick v. Ryan*, 540 U.S. 443, 459 (2004).[1]  In sum, a party may move for a judgment on the pleadings under Rule 12(c) for failure to state a claim upon which the court may grant relief. "In this context, Rule 12(c) is merely serving as an auxiliary or supplementary procedural device to determine the sufficiency of the case before proceeding any further and investing additional resources in it." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2004).  Lead Plaintiff's procedural objection to Defendants' raising their defense in a motion for judgment on the pleadings is therefore unpersuasive.

      Lead Plaintiff further argues that on the merits the Court should deny judgment on the pleadings due to factual disputes over the allegations in the Amended Complaint.  Relying on a standard of review based on mostly out-of-circuit legal authority, Lead Plaintiff argues that the Court should analyze "the content of the competing pleadings," decide whether the parties agree on the facts stated in the pleadings, and then decide whether Defendants are entitled to judgment as a matter of law based on the undisputed facts at the pleadings stage.  Pl.'s Mem. in Support 5 (ECF No. 82) (quoting *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014)).  Under this standard Lead Plaintiff contends that a ruling as a matter of law would be improper in this case.  The Amended Complaint alleges that Defendants acted with scienter, and Defendants in their Answer deny this allegation.  In light of the dispute over this essential element of Lead Plaintiff's securities fraud claims, Defendants are not entitled to a judgment on the pleadings.

      Lead Plaintiff's arguments fail to account for a number of critical points.  First and foremost, existing Sixth Circuit authority takes a different view of the Rule 12(c) standard and binds the Court to apply that standard.  As the Court has just explained, Rule 12(h)(2) operates to

---

[1] Rule 12(h)(3) "prolong[s] the life" of a lack-of-subject-matter-jurisdiction defense under Rule 12(b)(1) and requires a court to dismiss an action "if the court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3).

extend the failure-to-state-a-claim defense and allows a party to raise it in a number of ways, including in a Rule 12(c) motion, and at any time during the case, all the way through trial. Fed. R. Civ. P. 12(h)(2) (allowing a failure-to-state-a-claim defense in a Rule 12(c) motion or at trial). Whether a party seeks dismissal in a Rule 12(b) motion or judgment on the pleadings in a Rule 12(c) motion based on the opposing party's failure to state a claim, the Sixth Circuit analyzes both under the same standard of review. The point is the Court must look to the nature of the defense and the arguments raised in the Rule 12(c) motion in arriving at the correct standard of review. "The mere fact that [a failure-to-state-a-claim defense is] raised in the guise of a Rule 12(c) motion should not affect the manner by which the court determines what essentially are Rule 12(b) matters." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2004).

This approach is actually not inconsistent with the cases cited by Lead Plaintiff. For instance, the issue in *Perez v. Wells Fargo N.A.*, 774 F.3d 1329 (11th Cir. 2014) was whether the defendant should have sought entry of default on its counterclaim, rather than judgment on the pleadings, after the plaintiff failed to file a timely responsive pleading. The Eleventh Circuit recited the general standard of review for Rule 12(c) motions and held that the Rule 12(c) motion was "premature" because "the pleadings had not yet closed." *Perez*, 774 F.3d at 1339. It was therefore error for the district court to deem the allegations of the counterclaim admitted and grant the defendant a judgment on the pleadings without first deciding whether good cause existed to set aside an entry of default against the plaintiff. *Id.* ("For these reasons, we reverse the district court's order granting Wells Fargo's motion for judgment on the pleadings and remand so that the court can consider Perez's motion [to set aside the entry of default] under Rule 55(c)."). *Perez* did not

implicate and therefore never addressed the correct standard of review where a party uses a Rule 12(c) motion as a vehicle to raise the failure-to-state-a-claim defense under Rule 12(b)(6).

The Court finds the other cases cited by Lead Plaintiff to be, likewise, distinguishable. The other decisions do not actually address the fact that Rule 12(h)(2) "prolong[s] the life of" the failure-to-state-a-claim defense, *Kontrick*, 540 U.S. at 459, and allows a party to use Rule 12(c) as a procedural mechanism to raise the defense, while still requiring the reviewing court to apply the Rule 12(b)(6) standard of review. For example, in *Murphy v. Department of Air Force*, 326 F.R.D. 47 (D.D.C. 2018), the defendant filed an answer to the complaint and then filed a Rule 12(b)(6) motion. When the district court questioned whether the Rule 12(b)(6) motion was procedurally proper (since the pleadings had closed), the defendant requested that the district court treat its Rule 12(b)(6) motion as a Rule 12(c) motion. The district court rejected the defendant's request because of the "motions' markedly different functions, as well as the nuanced distinction between the legal standards that apply when these motions are considered." *Murphy v. Dept. of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018) (then-District Judge K. Brown Jackson). But *Murphy* never addressed other provisions of Rule 12 that permit a defendant to raise certain defenses, including a failure to state a claim, in a Rule 12(c) motion or how the nature of the relief sought in the Rule 12(c) motion might require a different standard of review. For instance, Rule 12(h)(2) allows a party to raise a Rule 12(b)(7) defense for the failure to join a party under Rule 19, which clearly has a different standard of review than the Rule 12(b)(6) defense for failure to state a claim. *Am. Express Travel Related Servs., Co., Inc. v. Bank One-Dearborn, N.A.*, 195 F. App'x 458, 460 (6th Cir. 2006) (explaining Rule 19's "three-step test for courts to use in determining whether an absent party must be joined"). The Court notes this additional legal authority but does not find it persuasive for the

proposition for which Lead Plaintiff cites it. The Court therefore declines Lead Plaintiff's invitation to base its decision on a comparison of the "competing pleadings."

One additional point bears on the standard the Court must apply in its review of Defendants' Motion for Judgment on the Pleadings. The Private Securities Litigation Reform Act of 1995 ("PSLRA") "imposes two additional pleading requirements": the pleadings must "specify each statement alleged to have been misleading along with the reason or reasons why the statement is misleading" and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 978 (6th Cir. 2018) (quoting 15 U.S.C. § 78u-4(b)(1), (b)(2)). The PSLRA goes further than Rule 8 and requires that the elements of securities fraud be pleaded with the heightened particularity required under Federal Rule of Civil Procedure 9(b). Generally speaking, Rule 9(b) requires a plaintiff to allege the time, place, and content of any misrepresentation; the defendant's fraudulent intent; the fraudulent scheme; and the resulting injury. *Power & Tele. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006) (citing *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). In other words, the PSLRA and Rule 9(b) "require a complaint to allege the who, what, where, when, and why of the fraudulent statements." *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*, 29 F.4th 802, 810 (6th Cir. 2022) (quoting *Goldstein v. MCI WorldCom*, 340 F.3d 238, 245 (5th Cir. 2003)). "So, when examining allegedly fraudulent statements, we ask: Who said the statement? What is the statement? Where did they say it? When did they say it? Why is it misleading?" *Id.* (citing 15 U.S.C. § 78u-4(b)(1)). If the complaint does not answer all of these questions, it fails to sufficiently plead securities fraud. *Id.*

"Claims of fraud raise a high risk of abusive litigation." *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 445 (6th Cir. 2008) (citing *Twombly*, 550 U.S. at 569 n.14)). Rule 9(b)'s

heightened pleading standard exists "(1) to alert defendants to the particulars of the allegations against them so they can intelligently respond; (2) to prevent 'fishing expeditions'; (3) to protect defendants' reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters." *Thompson v. Bank of America, N.A.*, 773 F.3d 741, 751 (6th Cir. 2014) (citing *Chesbrough v. VPA, P.C.,* 655 F.3d 461, 466–67 (6th Cir. 2011)).

## ANALYSIS

"Section 10(b) of the Securities Exchange Act makes it unlawful for any person to 'use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011) (quoting 15 U.S.C. § 78j(b)). The Securities and Exchange Commission has adopted Rule 10b–5, which prohibits a person from "mak[ing] any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b–5(b). The Court has dismissed Lead Plaintiff's Rule10b-5(b) misrepresentations claim for securities fraud.

Rule 10b-5 also makes it unlawful "(a) [t]o employ any device, scheme, or artifice to defraud," or "(c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit . . . in connection with the purchase or sale of any security." *Lorenzo v. S.E.C.*, 139 S. Ct. 1094, 1096 (2019) (quoting 17 C.F.R. § 240.10b–5)(a) & (c)). Courts have dubbed securities violations of this sort as "scheme liability." "Scheme liability occurs when a defendant employs 'any device, scheme, or artifice to defraud,' 17 C.F.R. § 240.10b–5(a) (Rule 10b–5(a)), or 'any act, practice, or course of business which operates or would operate as a

10

fraud or deceit upon any person,' 17 C.F.R. § 240.10b–5(c) (Rule 10b–5(c))." *IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 858 (11th Cir. 2016); *see also Lorenzo*, 139 S. Ct. at 1101 (construing the dictionary definition of "scheme" for purposes of Rule 10b-5(a) as a "project, plan, or program of something to be done").

Defendants now seek judgment as a matter of law on Lead Plaintiff's remaining claims of scheme liability. The Sixth Circuit has not defined the elements of scheme liability under Rule 10b-5. *See Benzon*, 420 F.3d at 611 ("However, there is very little case law explaining more specifically what types of claims are actionable under these provisions, which would assist the Court in determining whether Plaintiffs have properly stated a claim that Defendants violated 10b–5(a) and (c)."). Other Circuits, including "the two circuit courts that traditionally see the most securities cases, the Second and Ninth Circuits," have reached the issue. *Public Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 987 (8th Cir. 2012) (citing Schanbaum, *Scheme Liability: Rule 10b–5(a) and Secondary Actor Liability after Central Bank*, 26 Rev. Litig. 183, 197 (Winter 2007)). The Second and the Ninth Circuits have concluded that "[a] defendant may only be liable as part of a fraudulent scheme based upon misrepresentations and omissions under Rules 10b–5(a) or (c) when the scheme also encompasses conduct beyond those misrepresentations or omissions." *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.,* 655 F.3d 1039, 1057 (9th Cir. 2011); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) ("[W]here the sole basis for such claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim under Rule 10b–5(a) and (c)[.]"); *see also KV Pharm.*, 679 F.3d at 987 ("We join the Second and Ninth Circuits in recognizing a scheme liability claim must be based on conduct beyond misrepresentations or omissions actionable under Rule 10b–5(b).").

11

The Second Circuit has defined the pleading standards for scheme liability claims. "To state a scheme liability claim, a plaintiff must show: "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021) (citing *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 216 (S.D.N.Y. 2020)). Rule 9(b) applies to scheme liability claims because the claims sound in fraud. *Id.* This means that for a scheme liability claim, a plaintiff must specify with particularity "what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue." *Id.* (citing *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 622 (S.D.N.Y. 2005)).

Lead Plaintiff has argued that the "deceptive or manipulative act" that forms the basis of its "scheme liability" theory was Defendants' "systematic and repeated pattern of failing to provide adequate Formosan termite protection" and the measures the company took to impose "unconscionable price increases throughout 2019" in an attempt "to force customers to cancel their lifetime protection contracts and pass on expected damages costs to its customers." Pl.'s Mem. in Opp'n 9-10 (internal quotation marks and citations omitted). This argument suggests that the deceptive practices were directed at Terminix customers, not Terminix shareholders. Lead Plaintiff has not shown why Terminix's violations of Alabama consumer protection laws would prove violations of federal securities regulations. In the Court's view, the scheme or course of conduct alleged in the Amended Complaint consisted of a pattern of statements and omissions designed to conceal the full extent of Terminix's legal exposure and financial losses due to Formosan termite claims, centered in the Gulf region around Mobile, Alabama. In other words,

12

there is no meaningful distinction between Lead Plaintiff's misrepresentation theory and the scheme liability theory.

In any event, Defendants do not challenge the sufficiency of the Amended Complaint's allegations concerning Defendants' "deceptive or manipulative acts" or how those acts were taken "in furtherance of an alleged scheme to defraud." The issue presented in Defendants' Motion for Judgment on the Pleadings is whether the Amended Complaint plausibly alleges that Defendants perpetrated a scheme to defraud with the requisite intent and specifically alleged scienter with the particularity required by the PSLRA and Rule 9(b). In deciding Defendants' Rule 12(b)(6) motion to dismiss the misrepresentation claims, the Court concluded "that the Amended Complaint plausibly alleged, at least in part, material misrepresentations and misleading statements . . . ." Order Granting Mot. to Dismiss 61, Mar. 31, 2022 (ECF No. 70). The Court nevertheless concluded that the Amended Complaint did not allege enough facts to create a strong inference of scienter. As the Court explained its previous order:

> the allegations can be read to plausibly suggest that Defendants knew they had a problem in Alabama and then misled investors about the extent of the problem, touting their plans for a transformation of the Terminix business as a shield to hide the Formosan termite issues. But the allegations can also be read to suggest that Defendants' plans for a transformation of the Terminix business were announced to correct systemic issues at Terminix that caused the problems in Alabama in the first place. The Court holds that the allegations in the Amended Complaint are just as "consistent with the more plausible, non-culpable inference" that Defendants had developed what they thought was a solution to larger problems at Terminix, problems that manifested themselves in the Formosan termite claims in Alabama, and that Defendants disclosed the existence of the problem once it was confronted with significant arbitration awards with reasonable promptness. The inference argued by Lead Plaintiff that Defendants acted with the intent to deceive investors is merely plausible but not the only explanation from the facts alleged. This is not enough to plead a "strong inference" of scienter.

*Id*. at 65.

For largely the same reasons that the Court dismissed Lead Plaintiff's fraudulent misrepresentation claims, the Court now dismisses the Amended Complaint's scheme liability allegations.

The PSLRA makes it a mandatory pleading requirement for a plaintiff "with respect to each act or omission alleged . . . [to] state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind" in violating the securities laws. 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). This means "plaintiffs must plead facts showing that defendants had a mental state embracing intent to deceive, manipulate or defraud." *Omnicare III*, 769 F.3d at 472 (quoting *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 (1976)) (other citation omitted). "A strong inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Doshi*, 823 F.3d at 1039–40 (quoting *Tellabs*, 551 U.S. at 314). Under this heightened standard, courts must consider "plausible opposing inferences." *Id.* (citing *Tellabs*, 551 U.S. at 323). Courts "shall" dismiss pleadings that do not meet this standard. 15 U.S.C. § 78u-4(b)(3)(A).

In the context of securities fraud, scienter refers to a specific state of mind, "knowing and deliberate intent to manipulate, deceive, or defraud, and recklessness." *Id*. (citing *Ley v. Visteon Corp.*, 543 F.3d 801, 809 (6th Cir. 2008), *abrogated on other grounds by Matrixx Initiatives*, 563 U.S. at 48–50). "Recklessness is highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Id.* (quoting *Frank v. Dana Corp.*, 646 F.3d 954, 959 (6th Cir. 2011)) (internal punctuation omitted). Recklessness requires something more than negligence and is "akin to conscious disregard" and "typically require[s] multiple, obvious red flags," evidencing an "egregious refusal to see the obvious, or to investigate the doubtful." *Id*. (citations omitted).

"To decide if a plaintiff adequately pleaded a strong inference of scienter, we use a three-part test to determine the sufficiency of a plaintiff's scienter allegations." *Astec Indus.*, 29 F.4th at 812 (citing *Dougherty*, 905 F.3d at 979). "First, we must accept all factual allegations in the complaint as true." *Tellabs*, 551 U.S. at 322. Next, the Court reviews the allegations holistically "to determine whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Dougherty*, 905 F.3d at 979 (quoting *Tellabs*, 551 U.S. at 322–23). Finally, "we 'must take into account plausible opposing inferences' and decide whether 'a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Tellabs*, 551 U.S. at 323–24).

In assessing the pleadings for scienter, courts read the allegations in light of a non-exhaustive list of factors: (1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs. *Helwig*, 251 F.3d at 552; *see also Omnicare III*, 769 F.3d at 455, 473, 484 (applying the *Helwig* factors)).

While recognizing that a scheme liability claim under Rule 10b-5(a) and (c) is not identical to a misrepresentation or omission claim under Rule 10b-5(b),[2] the Court finds that the scienter required to prove such a scheme is essentially the same scienter required, at least under the facts alleged in this case, to prove the misrepresentation and omission claims the Court dismissed. Just as it did in granting Defendants' Rule 12(b)(6) motion to dismiss the misrepresentation claims, the Court holds that the Amended Complaint fails to allege enough facts to create a strong inference of scienter to support Lead Plaintiff's scheme liability claim. Lead Plaintiff's scienter arguments on the scheme liability claim track its scienter arguments on the misrepresentation claims. The Court finds no reason to deviate from its previous order holding that the Amended Complaint failed to satisfy the PSLRA's heightened pleading scienter pleading requirements. That decision remains the law of the case and therefore requires the dismissal of the scheme liability claim.

Nothing in Amended Complaint or in Lead Plaintiff's response to the Motion for Judgment on the Pleadings compels a different result. Lead Plaintiff focuses on two types of deceptive or manipulative acts Defendants committed as part of the alleged scheme to mislead investors. First, "Terminix engaged in a 'systematic and repeated pattern' of failing to provide adequate Formosan termite protection." Pls.' Resp. in Opp'n 9 (citing Am. Compl. ¶¶ 65-67). Second, "Terminix's 'unconscionable' price increases throughout 2019 (i.e. leading up to and throughout the Class

---

[2] The Supreme Court and the SEC "have long recognized considerable overlap among the subsections of [Rule 10b-5] and related provisions of the securities laws." *Lorenzo*, 139 S. Ct. at 1102 (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 383 (1983) ("[I]t is hardly a novel proposition that" different portions of the securities laws "prohibit some of the same conduct" (internal quotation marks omitted)). "A scheme liability claim is different and separate from a nondisclosure claim." *IBEW Local 595*, 660 F. App'x at 858 (citing *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 643 n. 29 (3d Cir. 2011), *abrogated on other grounds by Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013)).

Period) were intended in part to force customers to 'cancel their lifetime protection contracts' and pass on expected damages costs to its customers." *Id*. at 10 (citing Am. Compl. ¶61). According to Lead Plaintiff, these acts occurred before and during the class period and were part of the record of findings made by the State of Alabama as part of its own investigation into Terminix's business practices as well as the findings arbitration proceedings involving Terminix and Terminix customers. Lead Plaintiff argues that Varty and DiLucente were well aware of Terminix's mounting legal liabilities and deceptively concealed the liabilities from investors.

But these are the same allegations the Court has already considered as part of the Amended Complaint's misrepresentation claims. The Sixth Circuit has held that "Rules 10b–5(a) and (c) encompass conduct beyond disclosure violations" under Rule 10b-5. *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 610 (6th Cir. 2005) (citing *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 152–53 (1972)). And yet Lead Plaintiff cites largely the same factual circumstances to make out its claim that Defendants engaged in a scheme to mislead investors and the same circumstances to show that they acted with bad intent. Lead Plaintiff has not pointed to any additional fact or new development of law to show why the Court should reach one result for the misrepresentation claims and a different result for the scheme liability claims. Without more to show why the Court should take divergent views of the scienter issue, Defendants' Motion for Judgment on the Pleadings must be granted.

## CONCLUSION

The Court has previously held that the Amended Complaint fails to allege enough facts to show that Defendants engaged in prohibited conduct with the requisite scienter to hold them liable for violations of the Securities Exchange Act of 1934. That holding now requires the Court to grant Defendants judgment on the Amended Complaint's scheme liability claims. Therefore,

Defendants' Motion for Judgment on the Pleadings is **GRANTED**.  The Clerk of Court is directed to enter judgment.

**IT IS SO ORDERED.**

                                          S. THOMAS ANDERSON
                                          CHIEF UNITED STATES DISTRICT JUDGE

                                          Date: